IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Christopher W., | CV 21–50–M–DWM |
| Plaintiff, | |
| vs. | OPINION & ORDER |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  42 U.S.C. § 405(g).  The Commissioner's denial of benefits is affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance."  *Id.* (internal quotation marks omitted).  It is "such relevant evidence as a reasonable

1

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A claimant is disabled only if his impairments are so severe that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity in the national economy. *Id.* § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On June 6, 2019, Plaintiff filed his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on May 16, 2019. AR 15.[1] The claim was initially denied on

---

[1] Unrelated to this action, Plaintiff was found to have "100% medical disability from the military." *See* AR 679; AR 26. However, because the Veterans Administration decides disability based on a separate set of rules, its disability

December 2, 2019, and upon reconsideration on May 19, 2020.  AR 15.  After

filing a written request for hearing, Plaintiff and his counsel appeared

telephonically before ALJ Michael Kilroy at a hearing on November 18, 2020.  AR

15.  In addition to the testimony from Plaintiff, the hearing included testimony

from Marian Martin, Ph.D., a non-examining clinical psychologist who testified as

a medical expert, AR 57–69, and testimony from a vocational expert, AR 89–97.

On January 12, 2021, the ALJ denied Plaintiff's claims, finding Plaintiff

failed to show he was disabled from May 16, 2019, through the date of the ALJ's

decision.  AR 28.  At step one, the ALJ found Plaintiff meets the insured status

requirements of the Social Security Act through December 31, 2024.  AR 17.  He

found Plaintiff had not engaged in substantial gainful activity since May 16, 2019

(the alleged onset date of his alleged disability).  AR 17.  At step two, the ALJ

found Plaintiff had the following severe impairments: "degenerative disc disease of

the lumbar spine; obesity; and post-traumatic stress disorder (PTSD)."  AR 17.  At

step three, the ALJ found Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments.  AR 18.

At step four, the ALJ determined that Plaintiff has a residual functioning

capacity ("RFC") to perform:

——————————————

determination is not binding in the social security context.  20 C.F.R. § 404.1504.

sedentary work as defined in 20 CFR 404.1567(a), in that he can lift/carry/push/pull 10 pounds occasionally, and less than 10 pounds frequently, stand/walk up to 2 hours in an 8-hour workday, and sit up to 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. He can never crawl or kneel. He can occasionally climb ramps or stairs. He can occasionally balance, stoop, and crouch. He must avoid concentrated exposure to extreme cold and vibration. The claimant cannot work with large groups of people at any one time, but can interact with small groups of people (i.e., 2 or 3 individuals) on an occasional basis, and one-on-one on a frequent basis.

AR 21. The ALJ concluded that Plaintiff is unable to perform any past relevant work, as the demands of that work exceed his functional capacity. AR 26. Relying on the testimony from the vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including document preparer, credit information clerk, and food and beverage clerk. AR 27. Consequently, the ALJ concluded that Plaintiff was not disabled. AR 28.

Plaintiff appealed the ALJ's decision to this Court on April 26, 2021. (Doc. 1.) The Commissioner filed the certified administrative record on November 4, 2021. (Doc. 7.) This matter was fully briefed as of February 16, 2022. (Docs. 9, 10, 11.)

## ANALYSIS

Plaintiff argues the ALJ erred in two ways: (1) the ALJ failed to conduct an adequate psychiatric review of Plaintiff's mental limitations, and (2) the ALJ failed

to properly assess Plaintiff's alleged chronic pain impairments at step two.
Plaintiff argues that both failures rendered incomplete the hypotheticals posed to
the vocational expert.  But, contrary to Plaintiff's arguments otherwise, substantial
evidence supports the ALJ's determination to include only a moderate mental
limitation in the RFC, and the ALJ properly did not find Plaintiff's chronic pain
syndrome to be severe because such a syndrome is not an "impairment."
Consequently, Plaintiff's arguments fail across the board.

## I.    Mental Limitations

The regulations establish a special technique for assessing a claimant's
mental impairments.  20 C.F.R. § 404.1520a(a).  The regulations also require the
ALJ to document this technique and any findings flowing from it in a particular
way:

> [T]he written decision must incorporate the pertinent findings and
> conclusions based on the technique.  The decision must show the
> significant history, including examination and laboratory findings, and
> the functional limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s).  The decision must
> include a specific finding as to the degree of imitation in each of the
> functional areas described in paragraph (c) of this section.

*Id.* § 404.1520a(e)(4).

Under this technique, the ALJ must evaluate a claimant's "pertinent
symptoms, signs, and laboratory findings to determine whether [he] ha[s] a
medically determinable impairment(s)," and then the ALJ must "rate the degree of

functional limitation resulting from the impairment(s)." *Id.* § 404.1520a(b).  When

rating a claimant's medically determinable mental impairments, the ALJ must

consider "all relevant and available clinical signs and laboratory findings, the

effects of [a claimant's] symptoms, and how [a claimant's] functioning may be

affected by factors including, but not limited to, chronic mental disorders,

structured settings, medication, and other treatment." *Id.* § 404.1520a(c)(1).  The

ALJ's rating of a claimant's functional limitations is then based on the extent to

which the impairment "interferes with [the claimant's] ability to function

independently, appropriately, effectively, and on a sustained basis." *Id.*

§ 404.1520a(c)(2).  Functional limitations are identified for four broad areas,

(1) understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself, and each

area receives a rating on the following scale: none, mild, moderate, severe, and

extreme. *Id.* § 404.1520a(c)(3), (4).  Once the impairment receives a rating, the

ALJ determines the severity of that impairment at step two. *See id.*

§ 404.1520a(d)(1).  If the impairment is found to be severe, the ALJ then considers

whether the impairment meets or equals a listed disorder at step three. *Id.*

§ 404.1520a(d)(2).

   Here, the ALJ found Plaintiff's PTSD to be a medically determinable

impairment that was "severe" at step two.  AR 17.  At step three, the ALJ

concluded that Plaintiff's mental impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. AR 18, 20.  The ALJ rated Plaintiff's functional limitations for each of the four broad areas, finding Plaintiff to be mildly limited in three areas of functioning: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  AR 20.  The ALJ found Plaintiff to be moderately limited in his ability to interact with others.  AR 20.  At step four, the ALJ articulated Plaintiff's RFC, which includes the finding that Plaintiff "cannot work with large groups of people at any one time, but can interact with small groups of people (i.e., 2 or 3 individuals) on an occasional basis, and one-on-one on a frequent basis."  AR 21.

Plaintiff argues that the ALJ failed to properly apply the special technique and failed to document it, and the ALJ consequently posed a flawed hypothetical to the vocational expert.  According to Plaintiff, the ALJ failed to make the requisite finding at step three, *see* 20 C.F.R. § 404.1520a(d)(1), (2), and because the ALJ failed to properly state those findings, they were not incorporated into the RFC.  Because the ALJ relied on the purportedly flawed RFC to pose hypotheticals to the vocational expert, Plaintiff argues that the vocational expert's testimony must be disregarded.  The Commissioner responds that the ALJ properly applied and documented the technique.  Thus, according to the Commissioner, the RFC

accounted for all pertinent limitations, and the vocational expert properly answered hypotheticals while relying on it.  Because substantial evidence supports the ALJ's determination, the Commissioner has the better argument.

**A.     Application and Documentation**

Plaintiff correctly notes that, at step three, the ALJ "simply lists broad examples of symptoms that might cause limitation."  (Doc. 9 at 13); *see* AR 20–21. However, contrary to Plaintiff's assertion that the ALJ only articulated these broad examples, the ALJ also made explicit findings as to the degree of Plaintiff's limitation for the four functional areas, finding Plaintiff to be "mildly" impaired in three areas and "moderately" impaired in one area.  AR 20–21.  Determining this degree of limitation is all that the ALJ is required to do at step three, *see* 20 C.F.R. § 404.1520a(c)(3), (4), so long as the ALJ also "document[s] the application of the technique in the decision," *id.* § 404.1520a(e).  The regulations require the decision include specific findings as to the degree of a claimant's limitation, but they do not require that these findings appear at any particular part of the decision.  *See id.* § 404.1520a(e)(4).  Thus, the ALJ's documentation of the evidence on which he relied to evaluate Plaintiff's mental limitations—albeit outside steps two and three—is sufficient to satisfy the requirement that the decision "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the

severity of the mental impairment(s)." *Id.*

The ALJ summarized a November 2019 consultative examination by Edward Trontel, Ph.D., noted records from the Veterans Administration documenting that Plaintiff declined treatment, and noted that Plaintiff was not taking medication for PTSD. AR 24 (citing AR 502–05 (records from Dr. Trontel), AR 542 (Veterans Administration record documenting Plaintiff declined treatment for PTSD)). Dr. Trontel examined Plaintiff and confirmed that Plaintiff "met the criteria for PTSD," but also stated Plaintiff "was motivated to perform well, and [Plaintiff's] statement that vocational disability was a matter of physical infirmity was credible." AR 504. Dr. Trontel found "[t]here was no psychosis, known substance abuse, intellectual deficiency, cognitive impairment beyond that associated PTSD, or other psychological symptom disorders." AR 504. The March 2020 Veterans Administration records indicate that Plaintiff declined referral for treatment of his PTSD, AR 542, and there is no record that Plaintiff takes any medication for his PTSD.

The ALJ also found Dr. Martin's hearing testimony "highly persuasive" in reaching his conclusions as to Plaintiff's mental limitations. AR 24. Dr. Martin testified that the medical record documented Plaintiff's PTSD diagnosis, but also stated that the medical record "looks as if the primary issues that would interfere with work functioning seem to be physical." AR 62. Dr. Martin explained that she

10

would describe Plaintiff as moderately limited in his ability to interact with others because "the record does indicate that he tends to avoid certain situations like crowds, does his shopping in the middle of the night if he has to go somewhere like Walmart and . . . has some difficulties with noise and with traffic."  AR 64.

In sum, the ALJ both made the requisite findings at step three and the decision documents those findings consistent with the regulations.  Plaintiff argues that the ALJ failed to "build a logical bridge" between the step three findings and the documentation, (*see* Doc. 9 at 15; Doc. 11 at 4), but the ALJ explained that this "evidence fails to establish any form of treatment of PTSD since the alleged onset date," and the ALJ nonetheless gave Plaintiff "every benefit of the doubt" and imposed certain social limitations on Plaintiff in the workplace. *See* AR 25.  By making a conclusion based on the objective medical evidence, the ALJ linked his decision to the step three findings.  Therefore, Plaintiff's argument here fails.

### B.    RFC

In assessing a claimant's RFC, the ALJ must "consider all of [a claimant's] medically determinable impairments of which [he] is aware, including [any] medically determinable impairments that are not 'severe.'"  20 C.F.R. § 404.1545(a)(2).  In assessing a claimant's mental abilities, the ALJ must "first assess the nature and extent of [a claimant's] mental limitations and then determine [the claimant's] residual functional capacity for work on a regular and continuing

basis." *Id.* § 404.1545(c).  A claimant's "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.*

Plaintiff argues that the ALJ crafted an insufficient RFC because the RFC did not include Plaintiff's self-reported limitations related to his mental impairments. But Plaintiff's argument fails for two reasons: first, it conflates the ALJ's requirement to "consider" medically determinable impairments with a requirement to "incorporate," and it assumes that the ALJ did not provide adequate reasons to reject Plaintiff's testimony about the severity of his alleged mental impairments.  The ALJ's decision demonstrates that he properly considered Plaintiff's medically determinable mental impairments, and he also credited Plaintiff's severity testimony to the extent it was supported by the record.

As noted above, the ALJ discussed the objective medical evidence related to Plaintiff's alleged mental impairments, including PTSD.  More importantly, this RFC includes a limitation that reflects a finding that Plaintiff's ability to interact with others is moderately impaired by his mental condition.  *See* AR 21 ("The claimant cannot work with large groups of people at any one time, but can interact with small groups of people (i.e., 2 or 3 individuals) on an occasional basis, and

one-on-one on a frequent basis.").

The ALJ also properly discredited Plaintiff's testimony about the severity of his mental impairments. The Ninth Circuit has established a two-part test for determining the extent of any credit given to a claimant's symptom testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first step, the claimant must present objective medical evidence of an underlying impairment that could reasonably have caused some degree of the alleged symptom. *Id.* If the ALJ determines that a claimant is not malingering and has satisfied the first step, at the second step "the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* In evaluating the claimant's testimony, the ALJ may apply "ordinary techniques of credibility evaluation," which includes consideration of inconsistencies between the claimant's testimony and conduct, the claimant's unexplained failure to comply with prescribed treatments, and whether the claimant's daily activities are inconsistent with the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotations omitted) *superseded on other grounds by* 20 C.F.R. § 404.1502(a)). Additionally, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

13

Here, the ALJ properly considered that Plaintiff "has refused treatment by a psychiatrist, psychologist, or other mental health medical provider," does not take medication for his PTSD, and has not required treatment in an inpatient or emergency room setting. AR 25; *see Molina*, 674 F.3d at 1112–13. Moreover, as the Commissioner points out, Plaintiff's argument that the ALJ could not consider Plaintiff's failure to seek mental health treatment because Plaintiff "failed to receive medical treatment during the period he had no medical insurance," (Doc. 9 at 17), is unfounded. Plaintiff had insurance through the Veterans Administration during the time of his alleged mental impairments, *see, e.g.*, 668 (listing "VA" for insurance), and at the 2020 hearing, Plaintiff testified he did not seek treatment because a doctor wanted to reschedule him, AR 76. The ALJ properly considered these facts and, as noted above, incorporated a limitation to the RFC. Thus, contrary to Plaintiff's position, the RFC offered to the vocational expert painted a complete picture.

## II.   Chronic Pain

A severe impairment is any medically determined physical or mental impairment that lasts or is expected to last for a period of at least twelve months, 20 C.F.R. § 404.1520(a)(4)(ii), and that "significantly limits [a claimant's] physical or mental ability to do basic work activities," *id.* § 404.1520(c). *See id.* § 404.1522(a). Although the severity requirement is considered a "de minimis

screening device used to dispose of groundless claims," *Webb v. Barnhart*, 433

F.3d 683, 687 (9th Cir. 2005) (quotation marks and alteration omitted), "a physical

or mental impairment must be established by objective medical evidence from an

acceptable medical source," 20 C.F.R. § 404.1521.

Plaintiff argues that the ALJ erred at step two because he failed to find

Plaintiff's chronic pain syndrome severe.  (Doc. 9 at 18.)  But as the Commissioner

points out, "[c]hronic back pain is not an impairment but a symptom."  (Doc. 10 at

13); *see also* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00(D)(1)

("Musculoskeletal disorders may cause pain or other symptoms; however, your

statements about your pain or other symptoms will not alone establish that you are

disabled.").  Thus, the ALJ did not err at step two in failing to find Plaintiff's

chronic pain severe.  And, to the extent Plaintiff's argument can be construed as a

challenge to the ALJ's rejection of Plaintiff's testimony as to the severity of his

back pain, that challenge likewise fails.

The ALJ found Plaintiff to have severe degenerative disc disease at step two,

AR 17, but that it did not meet or medically equal the severity of a listed

impairment at step three, AR 18.  Plaintiff's degenerative disc disease falls under

"musculoskeletal disorders" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  To

determine the severity of this kind of disorder, the ALJ may consider whether the

claimant has pursued treatment and responded to it, whether the claimant uses an

assistive device, and medical and diagnostic findings. *See id.*, Listing 1.00. In making a non-severe finding here, the ALJ relied on the medical evidence in the record and discounted Plaintiff's testimony regarding the severity of his alleged back pain to the extent it was contradicted by the record. While the medical record indicates Plaintiff has a history of seeking treatment for back pain, substantial evidence supports the ALJ's finding that Plaintiff's degenerative disc disease did not meet or medically equal a listed impairment.

Plaintiff points to medical records predating the onset date of Plaintiff's alleged disability to "show an extensive history of chronic pain relating to his spinal impairments" and argues this history supports his subjective complaints of pain. (Doc. 9 at 19 (citing AR 381, 469, 607 (November 2018 records from appointment for back pain); AR 487 (July 2017 records from appointment for back pain)).) These records do not corroborate Plaintiff's allegations of disabling pain on and after the alleged onset date of May 16, 2019. Thus, while these records demonstrate Plaintiff has a history of seeking care for back problems, *see* AR 23, they do not mandate a finding of present disability.

The ALJ pointed to records of treatment (or the lack thereof) within the timeframe for the alleged disability in rejecting Plaintiff's subjective complaints of the severity of his pain; thus, the ALJ's determination is supported by substantial evidence. For example, as the ALJ noted, despite alleging onset of disability in

May 2019, Plaintiff did not seek or receive medical care for low back pain between February and December 2019. AR 23. "[C]ase law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Additionally, the ALJ cited discrepancies in Plaintiff's treatment records and Plaintiff's subjective pain testimony as a reason for discrediting this pain testimony. *See* AR 23–24. For instance, in May 2020, Plaintiff was seen for his lumbar radiculitis but reported that "the increased dose of oxycodone has made a significant difference in his functional abilities. He is able to mow the lawn and spend more time with his children." AR 696. The ALJ acknowledged that Plaintiff was seen in July 2020 and reported increased pain, which was consistent with Plaintiff's L4-L5 disk herniation with inferior migration. *See* AR 23.

As the ALJ discussed with Plaintiff's counsel at the hearing, the records indicate that Plaintiff had surgery after July 2020, but there are no records of the surgery itself. *See* AR 47–48. Plaintiff testified that he had surgery and "it just made everything worse." AR 72. But he also testified he "had some improvement" following the surgery and that medication helped him with pain management, though it "slowed [him] down" in other ways. AR 72–73. Records

from September 2020, after Plaintiff's back surgery, indicate that he rated his pain at 5.25 out of 10 and that medication provided 50% relief. AR 688. Additionally, as the ALJ noted, Plaintiff was able to ambulate without the use of an assistive device, and he did not claim that his back impairments or pain caused extreme loss of function of his upper extremities. *See* AR 19.

In sum, Plaintiff's activities and the medical records from the relevant time support the ALJ's determination that Plaintiff's back impairments did not meet or medically equal one of the listed impairments at step three. And, to the extent Plaintiff was limited by his back impairments, the ALJ incorporated those limitations in the RFC. *See* AR 21. Thus, the ALJ did not err in concluding that Plaintiff's chronic pain syndrome was not a "severe impairment" at step two, nor did the ALJ err in rejecting Plaintiff's subjective back pain testimony to the extent that testimony was contradicted by the objective medical evidence and Plaintiff's own activities.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Commissioner's denial of benefits is AFFIRMED.

DATED this 20ᵗ day of May, 2022.

Donald W. Molloy, District Judge
United States District Court

18